JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone:    (415) 436-7071
    Facsimile:    (415) 436-7234
    Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 07-749-VRW |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| RANDALL EVANS, JR., | |
| Defendant. | |

**I.**
**INTRODUCTION**

On November 27, 2007, a grand jury indicted defendant Randall Evans, Jr., alleging that he escaped from custody in violation of 18 U.S.C. § 751(a). The defendant's underlying sentence was for violating 18 U.S.C. § 922(g)(1) by possessing a firearm as a felon.

On February 7, 2008, the defendant pleaded guilty under Federal Rule of Criminal Procedure 11(c)(1)(A)-(B). In his Plea Agreement, the defendant admitted that he was in Bureau of Prisons ("BOP") custody after he was transferred from a federal prison to a halfway house in San Francisco to finish his sentence for a felony conviction. The defendant also admitted that he was still in BOP custody and serving that sentence the entire time he was at the halfway house. Finally, he admitted that on September 21, 2007, he knowingly and voluntarily left the halfway house without permission even though he was not scheduled for release until February 28, 2008.

In the Plea Agreement, the parties agreed that the defendant's total offense level under the sentencing guidelines was seven. The United States agreed that an appropriate sentence would be at the low end of the applicable guidelines range. The defendant, in turn, agreed not to seek a departure from the guidelines range. The U.S. Probation Office's Presentence Investigative Report ("PSR") computed the defendant's total offense level to be seven points – the same level that the parties determined the offense level was.

The parties did not agree to the defendant's criminal history category, but left that determination to the U.S. Probation Office ("USPO"). The PSR stated that the defendant's criminal history category is CHC-VI. Neither party objected to that determination. Under the guidelines (offense level seven, CHC-VI), the defendant's range is 15-21 months in prison.

The PSR recommends the same sentence the parties agreed to: the low end of the sentencing guidelines range. That sentence, 15 months, is appropriate in this case.

**II.**
**LEGAL STANDARD AT SENTENCING**

Under recent Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18

U.S.C. § 3553(a)(2). *United States v. Carty*, --- F.3d ---, 2008 WL 763770, at *3 (9th Cir. Mar. 24, 2008). The purposes identified in are: to provide just punishment for the offense; to deter future criminal conduct; to protect the public from further crimes by the defendant; and to give the defendant a chance to rehabilitate himself. *Id.*; 18 U.S.C. § 3553(a)(2)(A)-(D).

The Court should begin the process of determining an appropriate sentence by determining the correct guidelines range. *Carty*, --- F.3d ---, 2008 WL 763770, at *4. Once the Court determines the guidelines range, it should use that range as the starting point and the initial benchmark for the sentence. *Id.* The Court should keep the guidelines range "in mind throughout the process." *Id.* The Court should allow the parties to argue for a sentence they believe is appropriate and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id.* The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.* Finally, the Court should explain sufficiently the sentence that it imposes to allow meaningful appellate review. *Id.*

### III.
### 15 MONTHS IN PRISON IS THE APPROPRIATE SENTENCE

**A.    The Correct Guidelines Range Is 15-21 Months In Prison**

The parties and the USPO agree that the following sentencing guidelines calculation is correct:

| | |
|---|---:|
| Base offense level – USSG §2P1.1(a)(1): | 13 |
| Escape was from a halfway house – USSG §2P1.1(b)(3): | -4 |
| Acceptance of responsibility – USSG §3E1.1(a): | -2 |
| Total Offense Level: | 7 |

(Plea Agreement at 3:7-15; PSR ¶¶ 16-25.)

The parties did not agree to a criminal history category, but agreed that a sentence at the low end of the sentencing guidelines range was appropriate. (Plea Agreement at 3:7-15.) The

USPO calculated the defendant's criminal history category as CHC-VI. (PSR, ¶ 35.) Therefore, the defendant's sentencing guidelines range is 15-21 months.

**B.    A Prison Sentence Of 15 Months Satisfies The 3553 Factors**

    **1.    15 Months Is Appropriate Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – 3553(a)(1)**

Although some of the defendant's history and characteristics weigh in favor of leniency, his violent past balances them out. As the PSR noted, the defendant had a difficult childhood. (PSR, ¶¶ 51-53.) Many challenges he faced were beyond his control, but he compounded those problems by committing crimes at a very young age (PSR, ¶¶ 27-32) and by starting to use drugs at age 11 (PSR, ¶ 61). Some of those crimes were extremely violent. (PSR, ¶¶ 28, 29.) The defendant showed a glimmer of hope, though, by performing well academically in the structured environment of a military school in Pennsylvania. (PSR, ¶ 62.) Unfortunately, when he came back to San Francisco, he returned to his old ways and committed more crimes.

The defendant was shot in the head on August 28, 2002, which left him with physical and mental disabilities. (PSR, ¶ 57-60.) The defendant's disabilities rightfully provoke feelings of sorrow, but his actions while on escape status show that his disabilities did not scare him straight, or even incapacitate him. After the defendant escaped from the halfway house, he continued where he left off. On November 12, 2007, San Francisco Police Department Officers arrested the defendant while he was hanging out in an area known for drug dealing. (PSR, ¶ 9.) The defendant's decision to hang out in a known drug dealing are shows that although he is disabled, he is not incapacitated. That decision also shows that a sentence below the guidelines range is inappropriate.

    **2.    15 Months Is Necessary To Promote Respect For The Law And To Deter Future Escapes From Halfway Houses – 3553(a)(2)(A)-(B)**

Halfway houses are not secured like prisons, so inmates can escape easily by walking away, as this defendant did. The lack of security leads many defendants serving sentences in halfway houses to believe that escaping from a halfway house is not a serious crime. However, defendants who escape from halfway houses force law enforcement authorities to waste valuable

resources by conducting arrest operations that are dangerous to officers, dangerous to the escaped defendant, and dangerous to innocent third parties. A sentence of 15 months will discourage this defendant from escaping from a halfway house at the end of his next prison sentence. That sentence also will deter other inmates from escaping from halfway houses when they learn that this defendant received 15 months for walking out of a halfway house.

### 3. 15 Months Is Necessary To Protect The Public From The Defendant – 3553(a)(2)(C)

The defendant has been convicted of two serious violent felonies (PSR, ¶¶ 28, 29) and arrested for several others (PSR, ¶¶ 38, 39, 44, 45). Although the defendant is physically disabled, he could still commit violent crimes when he is released from custody. A prison term of 15 months will adequately protect the public from further crimes he could commit. It also will give the defendant additional time to rehabilitate himself, which will make him less likely to commit crimes when he is released, as discussed below.

### 4. 15 Months Will Provide The Defendant With Opportunities To Learn Additional Vocational Skills And Continue With Correctional Treatment– 3553(a)(2)(D)

Although the defendant's employment history has been sporadic, he has shown glimmers of becoming a productive member of society. For example, as discussed above, he did well academically when he was in the structured environment of a military school. (PSR, ¶ 62.) The defendant also has close relationships with his siblings. (PSR, ¶ 56.) His oldest sister is very successful and, even though she is a few years younger than he is, could serve as a role model for him when he gets out of prison. (PSR, ¶ 56.)

If the defendant stays in a structured environment, continues his physical and psychiatric therapy, and has an opportunity to learn vocational skills, he could hold a job and stay out of the criminal justice system.

## IV.
## **CONCLUSION**

The parties and the U.S. Probation Office agree that 15 months in prison, the low end of the applicable sentencing guidelines range, is the appropriate sentence for defendant Randall Evans. The Court should not depart below the sentencing guidelines range or impose a sentence higher than the low end of the applicable range. The Court should adopt the recommended sentence because it satisfies recent case law and the factors set forth in 18 U.S.C. § 3553(a).

DATED:     April 15, 2008                    JOSEPH P. RUSSONIELLO
                                             United States Attorney


                                                     /s/
                                             TAREK J. HELOU
                                             Assistant United States Attorney